## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Anthony MacKay, Arion Robinson, Aziz Khetani, Doug LaMarca, John Irvine, Nicolas Urquiza, Patrick Eckert, Ye Wang, individually and on behalf of all others similarly situated, | Case No. 20-1149-RGA <br><br> AMENDED CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |
| Plaintiffs, <br><br> v. <br><br> Lenovo (United States) Inc., <br><br> Defendant. | |

Plaintiffs Anthony MacKay, Arion Robinson, Aziz Khetani, Doug LaMarca, John Irvine, Nicolas Urquiza, Patrick Eckert, and Ye Wang, individually and on behalf of all others similarly situated, by their attorneys, file this Class Action Complaint ("Complaint") against Defendant Lenovo (United States) Inc. ("Lenovo"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on the investigation conducted by their counsel as to all other allegations.

### INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiffs bring this consumer class action alleging that Lenovo misled consumers about the quality and functionality of certain laptop computers that it

designed, manufactured, marketed, sold, and distributed to thousands of consumers throughout the United States.

2.     These laptop computers possess a material defect the prevents them from being used as portrayed in Lenovo's advertising materials, and Lenovo concealed, failed to disclose, or otherwise engaged in deceptive marketing with respect to this defect. As a result, many consumers purchased computers that became practically unusable after months or even days of use.

3.     In May 2017, Lenovo introduced a new model of laptop computer marketed in North America as the Flex 5 and in other regions as the Yoga 520 (the "Flex 5"). In April of the following year, Lenovo began selling the Yoga 730 laptop computer (the "Yoga 730", and together with the Flex 5, the "Class Laptops").

4.     Defendant marketed both computers as "2-in-1" devices with "360° flexibility": laptops with touchscreen monitors that can be folded flat against the underside of the base of the machine to approximate the form of a tablet computer. Lenovo represented that the Class Laptops:

> "Stay Flexible with 360-Degree Hinge . . . More than just a traditional laptop, the Flex 5 transitions with your schedule. Thanks to a durable 360-degree hinge, you can easily flip into tablet mode for browsing the web, or

stream a TV show in tent mode. With this much flexibility, you'll always find your perfect viewing angle."

\* \* \*

"Brilliant Clarity of Full High Definition Viewing . . . With up to 15.6" FHD IPS touchscreen narrow-bezel display, you can watch movies and browse the web in vivid detail from nearly every angle. Whether you're lounging on the couch or watching with friends, we've narrowed two sides of the screen to maximize your viewing experience."

\* \* \*

"The Yoga 730 13" is a truly multimode device, elegantly designed to be equally stylish as you transition from tablet mode to laptop mode and back. Available in sophisticated Iron Grey."

\* \* \*

"You can transition from tablet model to laptop mode and back with the new Yoga 730 15". Designed to be as stylish as you are, it is available in sophisticated Platinum."[1]

---

[1] *See* Lenovo Yoga 730 Tour, February 26, 2018, https://www.youtube.com/watch?v=ZK1CYacQ6_E&feature=youtu.be (last accessed June 6, 2019); Flex 5 (14"), *Product Page,* https://www.lenovo.com/us/en/laptops/ideapad/ideapad-flex-series/Flex-5-14/p/88IP8FX0831 (last accessed June 6, 2019) (hereinafter, "Flex 5 Product Page"); Lenovo Yoga 730 (13") *Product page,* https://www.lenovo.com/us/en/laptops/yoga/700-series/Yoga-730-13-/p/88YG7000964 (last accessed Feb. 7, 2020).

3

5.      Lenovo's marketing materials also boast of "Ultra HD" and "4K" high resolution displays, claiming that "you'll see every detail" and "you'll be able to watch movies and browse the web in vivid detail from nearly every angle."[2]

6.      Defendant uniformly represented to consumers that it had years of experience in the manufacture of computers and mobile devices and was in effect an expert in the manufacture, design, and use of computers.

7.      Plaintiffs and Class members saw or heard these representations from Defendant about the Class Laptops prior to purchasing their Flex 5 or Yoga 730 computers.

8.      Plaintiffs and Class members all purchased Class Laptops that failed in ordinary use of the machine, with part or all of the monitor display flickering, freezing, blacking out, and/or displaying corrupted visuals (*e.g.*, a grey screen marked by vertical lines).

9.      Contrary to Lenovo's representations, Lenovo fails to disclose that the Class Laptops are designed and manufactured with a common inherent defect that over time compromises the monitor display (the "Defect"), impairing the computer's graphical user interface. As a result, the user's ability to input

---

[2] *See* Yoga 730 15" Laptop, *Product Page*, https://www.lenovo.com/us/en/laptops/yoga/700-series/Yoga-730-15/p/88YG7000965 (last accessed June 6, 2019); FLEX 5 15.6" Datasheet, http://psref.lenovo.com/syspool/Sys/PDF/datasheet/Lenovo_Flex_5_15IKB_datasheet_EN.pdf (last accessed June 6, 2019).

information into the computer and to view program output (which is to say, the primary modes of user interaction with a computer) is dramatically reduced. Thus, the Defect renders the computer partially or wholly unusable.

10.    According to Plaintiffs and other Flex 5 and Yoga 730 laptop owners who have experienced the Defect, the common display problems are triggered and exacerbated when the display is opened or moved, such as when the user folds the monitor into "tent mode" or "tablet mode."

11.    Upon information and belief, the Defect is the result of ordinary stress on a vital component that is common in the Class Laptops. Specifically, in the Class Laptops, visual information is transmitted to the display via the embedded DisplayPort cable ("eDP cable"), which connects the computer's display to the motherboard and travels through the hinge assembly connecting the display and the body of the machine. If the eDP cable is poorly routed, opening and moving the display (such as when folding the monitor into tablet or tent mode) could loosen the cable and lead to the issues associated with the Defect.

12.    Consequently, the Class Laptops are not fit for their intended purpose as 2-in-1 laptop computers and cannot satisfy the representations Lenovo made in its marketing materials and warranties.

13.     There are hundreds, if not thousands, of customer posts on Defendant's own online forum complaining of the display issues described above in the Class Laptops. These posts date back to at least December 2017.

14.     Lenovo has responded to the Defect in several ways, all of which are inadequate. In communications with some owners of the Class Laptops, Lenovo has stated that a wiring issue was causing the screen flickering and other display issues. Despite acknowledging the Defect in this fashion, Defendant has been unable or unwilling to address the true scope and pervasive nature of the Defect in the Class Laptops.

15.     Defendant's laptop computers are covered by a limited warranty (the "Limited Warranty"), which warrants that Lenovo products are free of defects in material and workmanship and that Lenovo will repair, replace, or refund the purchase if it is unable to repair a product.

16.     The Defect manifests both inside and outside of the warranty period. Defendant has been unable to fix the Defect during the warranty period and routinely refuses to repair the Defect free of charge outside of the warranty period.

17.     Many other purchasers of the Class Laptops have also sent their computers in for repair (often multiple times), only to find that the same issues crop up after the purported repairs. Plaintiffs MacKay and Eckert also sent Lenovo

a notice letter on their own behalf and on behalf of the class before filing this action.

18.    Despite being aware of the cause of the Defect, Lenovo and its representatives have often engaged in, or directed frustrated customers to engage in, ineffective repair methods. Many customers who attempted to exercise their rights under the warranty were told the display issues were the result of a software problem and were told to install or update software, which did not fix the Defect. And when Lenovo accepted a Class Laptop for repair under the warranty, it often replaced the screen, "rerouted" the eDP cable, or merely taped it into place. None of these purported repairs remedied the display issues, because none addressed the Defect.

19.    Defendant marketed, promoted, and sold the Flex 5 and Yoga 730 laptops as 2-in-1 laptops featuring high resolution displays and monitors capable of folding into tent and tablet modes.

20.    Defendant knew that a material factor for consumers purchasing a Flex 5 or Yoga 730 was that the device possesses a monitor capable of movement into various positions and be able to consistently display visual information via a graphical user interface.

21.     The Defect, however, makes it difficult or impossible to interface with programs, watch movies, play games, or otherwise engage in a typical fashion with the Class Laptops.

22.     Lenovo concealed from and/or failed to disclose to Plaintiffs and the Class the defective nature of the Class Laptops, and failed to remove the Class Laptops from the marketplace or take adequate action to remedy the Defect. Rather, Lenovo sold and serviced the Class Laptops even though it knew, or was reckless in not knowing, that the Defect impacted the display of the Class Laptops and would ultimately result in Plaintiffs' and Class members' inability to use their Class Laptops for their intended purpose.

23.     Defendant's knowledge of the defect is evident from its acknowledgment of the defect as detailed herein, and from complaints lodged on Defendant's own online forum.

24.     As a result of Lenovo's unlawful, unfair, fraudulent, misleading, and deceptive practices, Plaintiffs and other consumers have purchased Lenovo's products under the mistaken belief that the Flex 5 and Yoga 730 laptops possessed high quality, functional monitor displays that were capable of folding without damaging the machine.

25.     Had Plaintiffs and the Class known the facts regarding the Defect in the Class Laptops, those facts would have been material to their and any

8

reasonable consumer's decisions to purchase the Class Laptops at the price they paid for them.

26.     As a consequence of Lenovo's false and misleading statements, its active concealment of the Defect, and its failure to repair or otherwise address the Defect, Plaintiffs and the Class have suffered injury in fact and actual damages in that the Class Laptops they purchased are unreliable and/or unusable for their intended purposes. As a direct and proximate result of the Defect, Plaintiffs and the Class have also suffered or will suffer damages in the form of, *inter alia*: out-of-pocket expenditures for the replacement and attempted repairs of the Class Laptops; diminished value of the Class Laptops; and the failure to receive the benefit of the bargain in their purchases of the Class Laptops.

27.     Accordingly, Plaintiffs bring claims for Defendant's breaches of warranties, violations of state consumer protection law, and violations of state common law as further detailed herein.

28.     In furtherance of the public interest, and in order to remedy Lenovo's wrongful conduct, Plaintiffs bring this action as a class action, and assert claims on behalf of themselves and a class of similarly situated persons seeking money damages, equitable relief, and injunctive relief for Defendant's conduct described herein.

29.     Upon information and belief, Defendant continues to sell the Class Laptops and continues to misrepresent and/or knowingly and intentionally conceal material facts concerning the characteristics, uses, and quality of the Class Laptops.

30.     This action will benefit the public interest by enjoining Defendant from misrepresenting and/or knowingly and intentionally concealing material facts concerning the characteristics, uses, and quality of the Class Laptops, which Defendant continues to advertise and sell to the general public.

31.     There is the threat of future injury because Plaintiffs and Class Members will need to be in the market to purchase other laptop computers, thus rendering injunctive relief appropriate.

32.     Because of the relatively small size of the typical individual Class members' claims, it is unlikely that individual Class members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

## **PARTIES**

33.     At all times relevant herein Plaintiff, Anthony MacKay, was a permanent resident of the United States residing in Washington. Plaintiff

purchased a Flex 5 for his personal use in connection with school on August 30, 2017, for $1,049.99, from an online retail seller.

34.     At all times relevant herein Plaintiff Arion Robinson was a permanent resident of the United States residing in Michigan. Plaintiff purchased a Flex 5 for personal and business use on August 20, 2018, for $999.99, from online retailer Fingerhut.

35.     At all times relevant herein Plaintiff Aziz Khetani was a permanent resident of the United States residing in Georgia. Plaintiff purchased a Flex 5 for personal use and for use in his role as an adjunct professor. Plaintiff purchased the Flex 5 on March 9, 2018, for $584.99, direct from Lenovo's website.

36.     At all times relevant herein Plaintiff Doug LaMarca was a permanent resident of the United States residing in Pennsylvania. Plaintiff purchased a Flex 5 for his daughter to use throughout college. Plaintiff bought the laptop from Costco's online store on March 3, 2018 and paid $1,199.99.

37.     At all times relevant herein Plaintiff John Irvine was a permanent resident of the United States residing in California. Plaintiff purchased a Flex 5 for personal use and business use as an independent contractor. Plaintiff purchased the Flex 5 from Costco retail location in Concord, CA, on August 26, 2018 and paid $999.99.

38.     At all times relevant herein Plaintiff Nicolas Urquiza was a permanent resident of the United States residing in New York. Plaintiff purchased a Flex 5 for personal and business reasons. He purchased a Certified Refurbished Flex 5 from Amazon's website on July 30, 2018 for $783.43.

39.     At all times relevant herein Plaintiff Patrick Eckert was a permanent resident of the United States residing in Massachusetts. Plaintiff purchased a Flex 5 for his son to use. Plaintiff purchased the Flex 5 on August 18, 2018 for $807.49, from Office Depot's website.

40.     At all relevant times herein Plaintiff Ye Wang was a permanent resident of the United States residing in New Jersey. Plaintiff purchased a Flex 5 on August 10, 2017, for $584.96, from a MicroCenter store in Paterson, NJ.

41.     Defendant Lenovo is a Delaware corporation with its principal office located at 1009 Think Place, Morrisville, North Carolina, 27560. Upon information and belief, Lenovo is a subsidiary of Lenovo Group Limited, a global Fortune 500 company and one of world's largest manufacturers and sellers of computers, with its global headquarters located in Beijing, China. Defendant Lenovo utilizes the website www.lenovo.com/us and its related webpages, as well as resellers, to market and sell personal computers and related products directly to consumers throughout the United States, including to consumers in Washington and Delaware.

## JURISDICTION AND VENUE

42.    This Court has personal jurisdiction over Defendant because it is incorporated in the State of Delaware; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in Delaware; and otherwise intentionally avails itself of the markets within Delaware through promotion, sale, marketing and distribution of its computers, which renders the exercise of jurisdiction by this Court proper and necessary as Lenovo is "at home" in Delaware.

43.    This Court has subject matter jurisdiction over all of Plaintiffs' claims under 28 U.S.C. § 1332(d). This is a class action, the matter in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and Plaintiffs and the Class members are citizens of states different from defendant.

44.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

45.    Lenovo's parent company was founded in China in 1984 and is headquartered in Beijing. The company designs, develops, manufactures, and sells personal computers, tablet computers, smartphones, workstations, servers, electronic storage devices, IT management software, and smart televisions.

46.     Lenovo operates in more than sixty countries and sells its products in around one hundred and sixty countries. Lenovo's principal facilities are in Beijing and Morrisville, North Carolina, with research centers in China, Japan, and Morrisville, sales centers in Beijing, Morrisville, France, and Singapore, and manufacturing centers in China, Mexico, India, and Whitsett, North Carolina.

47.     As of March 2019, Lenovo was the world's largest personal computer vendor by unit sales.

48.     Lenovo launched the Yoga family of computers—products named for their ability to assume multiple form factors due to a hinged screen—in 2012, with the launch of the Lenovo IdeaPad Yoga 13 laptop computer. Since that time, Lenovo has released at least 20 new lines laptop computers under the Yoga and Flex brand names.

## A.     **The Class Laptops**

49.     Both the 14" screen and 15" screen models of the Flex 5 laptops went to market in or around May 2017 with the basic models priced at $799.99. The Yoga 730 model of laptop went to market in or around April 2018; the basic 13" screen model was priced at $880, while the basic 15" screen model was priced at $990.

50.    Defendant marketed both computers as high quality 2-in-1 laptops with touchscreen monitors that could be folded flat against the underside of the base of the machine.

51.    Specifically, Lenovo stated that the "durable" and "versatile 360-degree hinge" of the Flex 5 enabled the user to "easily flip into tablet mode for browsing the web, or stream a TV show in tent mode. With this much flexibility, you'll always find your perfect viewing angle."[3]

52.    Similarly, Lenovo marketed the "360° flexibility" of the Yoga 730, describing it as a "truly multimode device, elegantly designed to be equally stylish as you transition from tablet mode to laptop mode and back."[4]

53.    Defendant represented to consumers that it had years of experience in the manufacture of computers and was in effect an expert in the manufacture, design, and use of computers.

---

[3] *See* Flex 5 Product Page; YOGA 520 Tour, February 27, 2017, https://www.youtube.com/watch?v=nAt5k4zP2fs (last accessed June 6, 2019). Defendant also touted the "brilliant clarity of full high definition viewing" of the "touchscreen narrow-bezel display" enabling users to "watch movies and browse the web in vivid detail from nearly every angle," and the "precise design" of the machine. *See also* Flex 5 Product Page.

[4] *See* Lenovo Yoga 730 Tour, February 26, 2018, https://www.youtube.com/watch?v=ZK1CYacQ6_E&feature=youtu.be (last accessed June 6, 2019); Yoga 730 Datasheet, https://forums.lenovo.com/lnv/attachments/lnv/mwc2018_en/3/1/53905_Yoga%20730-13-15IKB%20Datasheet_FA_180219_LR.pdf (last accessed June 6, 2019). Defendant marketed the Yoga 730 as a "premium" machine featuring a "15" wide-angle display" designed for "watching the latest in theatrical quality video, movies, and TV exactly the way they were meant to be seen. With 300 nits brightness, you'll see every detail." *See* Yoga 730 15" Laptop, *Product Page,* https://www.lenovo.com/us/en/laptops/yoga/700-series/Yoga-730-15/p/88YG7000965 (last accessed June 6, 2019).

54.    Defendant's Limited Warranty "warrants that each Lenovo hardware product that you purchase is free from defects in materials and workmanship under normal use during the warranty period."[5] If a Lenovo-approved service provider "determines that it is unable to repair your product, the Service Provider will replace it with one that is at least functionally equivalent. If the Service Provider determines that it is unable to either repair or replace your product, your sole remedy under this Limited Warranty is to return the product to your place of purchase or to Lenovo for a refund of your purchase price."[6]

55.    Defendant designed, manufactured, warranted, advertised, and sold the Class Laptops to thousands of consumers throughout the United States.

56.    Defendant marketed, promoted, and expressly warranted that the Class Laptops were premium, fully functioning 2-in-1 computers, able to assume tablet and tent mode, and furthermore able to perform all of the basic functions of similar laptops of their class.

57.    Plaintiffs and the Class members purchased their Class Laptops to be used for computing purposes like those portrayed by Defendant in their marketing materials for all of the Class Laptops.

---

[5] *See* Lenovo Limited Warranty, https://download.lenovo.com/pccbbs/thinkcentre_pdf/l505-0010-02_en_update.pdf (last accessed June 6, 2019).
[6] *Id.*

16

**B.**     **The Defect**

58.     Contrary to Lenovo's representations, the Class Laptops are designed and manufactured with an inherent defect that compromises the monitor display. During ordinary use of the machine, the Defect causes part or all of the monitor display to flicker, freeze, black out, and/or display corrupted visuals (e.g., a gray screen marked by vertical lines). When these issues manifest, use of the computer is, at best, difficult, and often impossible because the user cannot see their own input or the computer's visual output. Since the Defect impairs the user's visual interface to the machine, it renders the device partially or wholly unusable.

59.     According to Plaintiffs and other Flex 5 and Yoga 730 Laptop owners who have experienced the Defect, the display problems are triggered and exacerbated when the display is opened or moved, such as when the user folds the monitor into tent or tablet mode.

60.     Consequently, the Class Laptops are not fit for their intended purpose and cannot perform in accordance with Lenovo's marketing materials and warranties.

**C.**     **Plaintiff Specific Facts**

    **i.  Plaintiff MacKay**

61.     Plaintiff MacKay purchased a Flex 5 for his personal use in connection with school on August 30, 2017, for $1,049.99, from an online retail

seller. Plaintiff researched the Flex 5 online before he bought it, including by reviewing Lenovo's representations that it was able to be used in laptop mode, tent mode, presentation mode, and tablet mode, on Lenovo's website and third-party reviews. These representations led Plaintiff to believe that the Flex 5 would be suitable for laptop and tablet use. Plaintiff viewed Lenovo's representations on its website and thereafter purchased the Flex 5 because he was induced to believe its functionality would fit his needs.

62.    His purchase was covered by the Limited Warranty for a period of one year.

63.    Within weeks of purchasing the computer Plaintiff noticed the monitor display flickering. This issue worsened over time, greatly diminishing his ability to use the machine, and only a few months after the purchase the display began blacking out, rendering the computer unusable. These issues would occur after only minutes of use and sometimes upon powering on the machine.

64.    Plaintiff sent his Flex 5 to Lenovo for repair twice under the Limited Warranty. The first time, in or around June 2018, Lenovo failed to fix the Defect and Plaintiff continued to experience screen flickering and black out while using the machine. Plaintiff sent his computer to Lenovo a second time in January 2019, but the day after Plaintiff received the purportedly repaired computer the screen flickering and black outs resumed.

18

65.     In February 2019, after the second failed repair attempt, Plaintiff again contacted Lenovo about repairing his Flex 5, but Lenovo stated that his warranty had expired and refused to repair the machine free of charge.

66.     The issues caused by the Defect were so severe that Plaintiff has been unable to use his laptop unless it is connected to an external monitor.

**ii.    Plaintiff Arion Robinson**

67.     Plaintiff Robinson purchased a Class Laptop manufactured by Defendant on August 20, 2018, for $999.99, from online retailer Fingerhut. Plaintiff intended to use the computer for personal, business, and academic reasons, and was induced to purchase the device because of Lenovo's representations of the Flex 5 as a capable 2-in-1 device, which Ms. Robinson took to mean that she could use the laptop as a tablet. Ms. Robinson also considered the laptop's storage and processor configurability to be the most cost-effective option for her needs.

68.      Before deciding on the Flex 5 as her purchase, Ms. Robinson also considered Microsoft, Dell, and HP options but found their offerings to be outside of her price range. Plaintiff purchased the Flex 5 because she could split up payments through the online retailer, Fingerhut, and the configuration she could afford, along with the Flex 5's features, matched her needs.

19

69.    Plaintiff Robinson's purchase was covered by the Limited Warranty for a period of one year.

70.    On or about February 10, 2020, Plaintiff noticed the monitor display flickering. The flickering occurrence was random, sometimes manifesting right after startup, and other times after regular use. Plaintiff is afraid of closing her laptop for fear that the display will entirely cease to function.

71.    On or about July 23, 2020, Plaintiff contacted Lenovo's customer support. Lenovo informed Plaintiff that because her device was out of warranty, she would have to take her laptop to a local repair shop and repair it at her own cost. Despite her laptop being covered by Lenovo's Limited one-year warranty, Plaintiff came to realize after checking on Lenovo's website that the warranty began to run on November 2017 and would run out in January 2019. Ms. Robinson purchased her device in August 2018, meaning she only had five months of warranty coverage left. At no point did Lenovo offer to return the purchase price.

72.    Plaintiff bought her device on credit and continues to make payments on the defective Class Laptop. She has not yet purchased a replacement device.

73.    Due to the Defect, Ms. Robinson has missed work and classes. She continues to make payments and has resorted to keeping the device on at all times, disabling sleep mode, and leaving the device charged so as not to risk the display turning off.

74.    Plaintiff used her Class Laptop as any reasonable consumer would. Had Plaintiff known of the Defect, she would not have purchased the Class Laptop or would have paid less for it.

**iii.    Plaintiff Aziz Khetani**

75.    Plaintiff purchased a Flex 5 manufactured by Defendant on March 9, 2018, for $584.99, direct from Lenovo's website. Plaintiff intended to use the computer as a personal device and also in his role as an adjunct professor. He needed a reliable computer to communicate and stay in touch with his students, particularly one with a dependable screen and camera.

76.    Plaintiff Khetani researched the laptop's specifications by visiting Lenovo's website. There he saw Lenovo's primary representations of the laptop's ability to turn into a tablet and that it had a touch screen. Plaintiff believed that the combination of these features, a touchscreen and 360°, would provide him with flexibility while on-the-go and were convenient features. Plaintiff also saw Lenovo's representations of the Flex 5's good build quality, because of the metal material used. Plaintiff also relied on Lenovo's reputation for durability when making his purchase. It was Lenovo's reputation for creating durable products that led Mr. Khetani to purchase the Flex 5 over competitor offerings from Dell, Acer, and HP. Mr. Khetani believed he would be purchasing a quality product.

77.     His purchase was covered by the Limited Warranty for period of one

year.

78.     On or about June 2019, Plaintiff noticed the monitor display

flickering. The defect happened seemingly at random, but would also be triggered

whenever he moved the laptop or touched the screen.

79.     On or about July 15, 2020, after contacting Lenovo's customer

support, Plaintiff received an email informing him that his case had been elevated

and assigned a Customer Care Case Manager.

80.     On or about July 21, 2020, Plaintiff received another email from

Lenovo informing him that, due to his device being out of warranty, he would not

be provided an out-of-warranty repair. Plaintiff continued to seek a resolution with

Lenovo's customer service team, but received no further responses as his case had

been closed. At no point was Plaintiff given the option to receive his purchase

price back.

81.     Unable to reach a resolution with Lenovo and still in need of his

laptop, Plaintiff was forced to find alternative solutions. On or about August 17,

2020, Plaintiff purchased an external monitor from Staples' online store, due to the

defective nature of his laptop's display. He paid $85.58 for the external monitor.

Because the computer's camera also did not work due to the defect, Plaintiff

22

purchased his brother's used MacBook for $200 to use its functioning screen and
camera.

82.     Plaintiff never received a reimbursement for either of these purchases.

83.     Plaintiff used his Class Laptop as any reasonable consumer would.
Had Plaintiff known of the Defect, he would not have purchased the Class Laptop
or would have paid less for it.

**iv.     Plaintiff Doug LaMarca**

84.     Plaintiff purchased for his daughter a Flex 5 manufactured by
Defendant on March 3, 2018, for $1,199.99, from Costco's online store. Plaintiff
intended for his daughter to use the computer to finish her senior year of high
school and for her to use throughout college.

85.     His purchase was covered by the Limited Warranty for a period of one
year.

86.     Plaintiff chose the Lenovo over competitor products because he
believed that Lenovo had a good reputation for manufacturing quality products.
Plaintiff anticipated that his daughter's college work and assignments would be
aided by a laptop with a touchscreen display and pen input that could also be
turned into a tablet. Lenovo's representations of the Flex 5 as able to be used in
laptop mode, tent mode, presentation mode, and tablet mode, led Plaintiff to

believe that the Flex 5 would be suitable for laptop and tablet use. The Flex 5's solid state storage size was also important to Mr. LaMarca.

87.     On or approximately April 2019, Plaintiff's daughter reported that the Class Laptop had begun to flicker, delaying her ability to complete her schoolwork and leading to loss of work. The flickering began immediately at startup of the device. The screen's flicker continued worsening through May. By July, the screen was unusable.

88.     On or around July 2019, Plaintiff contacted Lenovo's service line and learned that his laptop was out of warranty. Repairs would not be covered without an out-of-pocket payment. At no point did Lenovo offer to return to Plaintiff the purchase price of the laptop.

89.     Still needing a laptop for his daughter to complete her school work, Plaintiff spent approximately $1200 to purchase a MacBook Pro. Plaintiff has not received a reimbursement from Lenovo for this purchase.

90.     Plaintiff's daughter used the Class Laptop as any reasonable consumer would. Had Plaintiff known of the Defect, he would not have purchased the Class Laptop or would have paid less for it.

   **v.   Plaintiff John Irvine**

91.     Plaintiff Irvine purchased a Flex 5 manufactured by Defendant on August 26, 2018, for $999.99, from Costco's website and picked up his device

24

from the Costco located at 2400 Monument Blvd., Concord, CA 94520. Plaintiff

intended to use the computer for personal reasons and to assist him run his

business as an independent contractor.

92.     Plaintiff Irvine considered laptops from a number of manufacturers

but decided on the Flex 5 for the features it offered, including its touchscreen 4K

resolution display. Its value proposition, given the specifications he obtained,

greatly influenced Mr. Irvine's purchase. Mr. Irvine credits the connection running

through the hinge for the reason why the Defect manifested on his device.

93.     His purchase was covered by the Limited Warranty for a period of one

year.

94.     On or about January 2019, Plaintiff noticed multiple display issues.

These included, flickering, freezing, blacking out, and corrupted images. The

defect happened seemingly at random, sometimes not manifesting for weeks at a

time. Other times, the defect would appear at startup, leading Plaintiff to restart his

computer several times before the flickering stopped. The issue was so severe that

any written content on the screen became unreadable. Because the flickering would

sometimes occur while Plaintiff was in the middle of a project, he had no choice

but to cycle through several restarts because the device was unusable otherwise.

95.     Plaintiff would periodically receive pop-up messages from Lenovo on

his home screen that offered to scan his device and warn him of problems. The

scans instructed Mr. Irvine to contact Lenovo since problems had been detected. Mr. Irvine contacted Lenovo more than once in response to the service scans and allowed Lenovo remote access to address latent issues, none of which were related to, or fixed, the screen flicker. At the end of the service session, Lenovo offered anti-virus software for Plaintiff to purchase. Because these remote sessions neither detected nor fixed the screen flicker defect, Plaintiff thought it would be fruitless to contact Lenovo over the phone, for fear that he would be asked to go through the same steps as in the remote access sessions.

96.     Plaintiff endured the Defect for over a year, switching over to an older laptop that the Flex 5 was purchased to replace when the screen would not stop flickering. Mr. Irvine eventually replaced the Flex 5 with a 15-inch LG Gram purchased from Costco for $1309.99, which he purchased on November 27, 2020.

97.     Plaintiff never received a reimbursement for this laptop.

98.     Plaintiff used his Class Laptop as any reasonable consumer would. Had Plaintiff known of the Defect, he would not have purchased the Class Laptop or would have paid less for it.

**vi.     Plaintiff Nicolas Urquiza**

99.     Plaintiff Urquiza purchased a Certified Refurbished Flex 5 manufactured by Defendant on July 30, 2018, for $783.43, from Amazon's website.

26

100.   Prior to making his purchasing decision, Mr. Urquiza saw the Flex 5 advertised in several websites such as Amazon and Best Buy. The advertisements represented that the Flex 5 was a 2-in-1 device capable of being used as a laptop and tablet. Some of the photos Mr. Urquiza saw showed the laptop open at 90°-100° to allow for keyboard use. In other photos, the Flex 5 appears with the keyboard facing down and the display open in an angle greater than 270°, implying the device could be used to watch video or interact with the device through the touchscreen only. Mr. Urquiza also saw photos showing the device open in an angle of about 300°, upside down, and supported upon a surface by the upper edge of the display frame and the lower edge of the keyboard case. The images displayed on the laptop screen were upright, implying that the image would be conveniently rotated for an intended use of the device in such a way. Lastly, Mr. Urquiza also saw the Flex 5 open 360°, with the keyboard facing down and the screen facing up, allowing its use as a tablet. Mr. Urquiza also saw the Flex 5 advertised as compatible with a stylus.

101.   Plaintiff intended to use the computer for personal and business reasons. He consulted reviews on blogs and websites like CNET before making his purchasing decision. Mr. Urquiza looked for a combination of specifications that would aid his video and photo editing needs, for the price range he was

27

considering. The Flex 5's representations as a 2-in-1 device, capable of being used as a laptop and tablet, was a key feature that informed Mr. Urquiza's decision.

102.   Plaintiff's purchase was covered by a 90-day warranty.

103.   On or about April 2019, Plaintiff noticed the monitor display flickering. Its occurrence was random, though could be triggered when he moved the screen. Vibrations from the keyboard when typing also seemed to trigger the screen flicker, as would browsing certain websites.

104.   Plaintiff Urquiza frequently travels in South America for work and is still there because of the pandemic. He took his device to two different repair shops in Argentina and Brazil, where he was informed of this problem. The repair shops notified Plaintiff that they could only provide temporary fixes, by reconnecting the Flex's components. A permanent fix, they advised, would require replacement of the entire screen. In total, taking into account currency conversion, Plaintiff estimates he spent around $50 for these repairs.

105.   Plaintiff was unable to find Lenovo's customer support email address so he opened a chat support line, where he was informed the Defect was a hardware issue. Plaintiff was advised to call Lenovo's support phone line. Since he was in another continent and because his device was out of warranty, he thought it futile to further contact Lenovo.

106.   Plaintiff never received a reimbursement for the cost of his repairs.

107.   Plaintiff used his Class Laptop as any reasonable consumer would. Had Plaintiff known of the Defect, he would not have purchased the Class Laptop or would have paid less for it.

**vii.   Plaintiff Patrick Eckert**

108.   Plaintiff purchased a Flex 5 manufactured by Defendant on August 18, 2018, for $807.49, from Office Depot's website. Plaintiff intended for his son to use the computer.

109.   His purchase was covered by the Limited Warranty for a period of one year.

110.   Plaintiff purchased the Flex 5 because he needed a laptop with the internals of a traditional computer, but one that could also become a tablet to make it easier for his son to use. The Flex 5's hinge, which allowed the laptop display to rotate 360°, made this device a suitable choice for the special needs of his son.

111.   Within four months of purchasing the computer Plaintiff noticed the monitor display flickering. This issue worsened over time, greatly diminishing his ability to use the machine, and only a few months after the purchase the display began blacking out, rendering the computer unusable. These issues would occur after only minutes of use and sometimes upon powering on the machine.

112.   Plaintiff contacted Lenovo three days after his warranty expired for guidance on how to repair his device. He was informed that he would need to take

his computer to Best Buy and pay out of pocket for repairs. At no point did Lenovo offer to return the purchase price of his computer.

113.   Still in need of the device, Plaintiff purchased a 24-inch monitor for $169.00 because the Flex 5's display was unusable. Plaintiff has never been reimbursed for this purchase.

114.   The issue caused by the Defect were so severe that Plaintiff often opted to use another eight year old laptop instead of the new Flex 5. During his first year of ownership, Plaintiff estimates that in the aggregate he used the Flex 5 for approximately two months, after taking into account the time the Flex 5 was out for repair and the time it was rendered unusable by the Defect.

115.   Plaintiff has recently purchased a replacement laptop from manufacturer MSI, for which he paid $742.69. Plaintiff has not been reimbursed for the purchase price of this laptop.

**viii.   Plaintiff Ye Wang**

116.   Plaintiff Wang purchased a Flex 5 manufactured by Defendant on August 10, 2017, for $584.96, from a MicroCenter store located at 263 McLean Blvd., Route 20 Retail Center, Paterson, NJ 07504. Plaintiff intended to use the Laptop for personal reasons and was drawn to the device for being a cost-effective option that included a high-definition screen for watching online videos and an 8th generation Intel Core i5 processor to meet his work needs. The device's 2-in-1

functionality also informed Plaintiff's purchasing decision. Mr. Wang saw that the device's screen could rotate 360° and be positioned in a number of ways, to include laptop mode, tent mode, presentation mode, and tablet mode, which added to the Flex 5's value proposition.

117.   His purchase was covered by the Limited Warranty for a period of one year.

118.   On or about March 2020, Mr. Wang began to experience the defect. Immediately upon start up, he would be greeted by a flickering screen ranging in severity. At times, half of the screen would freeze. Other times, Plaintiff would see large stripes of blacked out lines.

119.   Plaintiff attempted to contact Lenovo for support, but because of the COVID pandemic, Lenovo closed its telephone support center. Mr. Wang could attempt to receive support either though an online chat or through a paid service he was not willing to pay for. Since his device was out of warranty, he was informed through the online chat function that Lenovo would not help him resolve his issue.

120.   Still needing the laptop, Plaintiff paid $250 for an HP external monitor. Plaintiff has not received a reimbursement for this purchase.

D.   **Common Factual Allegations**

121.   The Defect has impacted many other purchasers of the Flex 5. For example, on the English Community forum on the Lenovo website (the "Lenovo

Forum"), on December 26, 2017, a forum member created a thread entitled

"Lenovo Flex 5 1470 black screen flickering" and wrote:

> My ~2 week old Lenovo Flex 5's screen started to flicker
> a few days ago and the issue has become progressively
> worse since then to a point where most of the screen is
> covered by black flickering at times. The computer starts
> fine, but when the computer is moved and especially when
> the screen is moved up or down the flickering appears.
> Sometimes the flickering only starts after the computer has
> been on for a few hours (restarting the PC fixes the issue
> for a short while).
>
> I have tried updating to the latest Intel graphics drivers in
> the device manager to no avail. I then tried uninstalling the
> display drivers from the device manager, that only seemed
> to work for a short while.[7]

122.   In the same thread, another customer replies: "I have the exact same

problem. My issue occurs mostly when i just turn the laptop on but once i start

using it its fine. It does flicker when i move the screen and overtime its gotten

worse when i first pull open the laptop." Another states: "I am also having this

issue where black flickering will cover all or most of the screen. This problem has

appeared in the last week and I bought this laptop new 3 weeks ago."[8]

123.   In another thread on the Lenovo Forum created on December 21,

2017, and entitled "New Flex 5 has some problems," a customer wrote:

> [A]bout four days ago, the screen started flickering black
> when the screen was positioned a certain way. It happened

---

[7] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Lenovo-Flex-5-1470-black-screen-flickering/m-p/3919809 (last accessed June 6, 2019).

[8] *Id.*

again the next day but hasn't since then. I'm not trying to push my luck so I haven't put it tablet mode. However, the night before the problem started I used it in tablet mode and might have opened it too quickly. I fear that may have been what caused the flickering but I don't know if it was just a temporary thing or if it's a better bet to send it in to have it looked at. I'm a bit against sending it in because I'm on break at the moment and would like to use the laptop but I don't want it getting worse when my classes start again and I be stuck without a laptop for long time.[9]

124.   Within this thread there are four pages of posts like these, and on the Lenovo Forum there are dozens of threads like this one detailing the issues caused by the Defect. Below are a few examples of such threads pertaining to the Flex 5, each one created by a different consumer and containing a multitude of testimonials regarding the issues created by the Defect:

1.   Lenovo YOGA 520 Screen Flickering (created February 15, 2018).[10]

2.   Flex 5 1570 Display vertical stripe and lower pink band - flicker (created April 3, 2018).[11]

3.   Lenovo FLEX 5-1470 black sreen flickering and warranty claim (created April 6, 2018).[12]

---

[9] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/New-Flex-5-has-some-problems/m-p/3916332 (last accessed June 6, 2019).

[10] *See* https://forums.lenovo.com/t5/Lenovo-Yoga-Series-Notebooks/Lenovo-YOGA-520-Screen-Flickering/m-p/3981483?search-action-id=465478280913&search-result-uid=3981483 (last accessed June 6, 2019).

[11] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Flex-5-1570-Display-vertical-stripe-and-lower-pink-band-flicker/m-p/4032534?search-action-id=465477875508&search-result-uid=4032534 (last accessed June 6, 2019).

[12] *See* https://forums.lenovo.com/t5/General-Discussion/Lenovo-FLEX-5-1470-black-sreen-flickering-and-warranty-claim/m-p/4035448?search-action-id=465477875508&search-result-uid=4035448 (last accessed June 6, 2019).

4.      Screen Flickering on Ideapad Flex 5 (created July 15, 2018).[13]

5.      New Flex 5 screen doesn't work and poor customer service (created November 21, 2018).[14]

6.      Lenovo Flex 5 1570 Black Screen Flickering (created December 5, 2018).[15]

7.      Flex 5 1570 screen flickering in tablet mode (created December 20, 2018).[16]

125.   As with the Flex 5, there are numerous posts on the Lenovo Forum attesting to the tendency of the monitor display of the Yoga 730 to flicker, freeze, black out, and/or display corrupted visuals. The earliest mention of this problem is on May 22, 2018, in a thread that spans twenty-one pages and almost two years.[17]

126.   This thread contains numerous accounts of customers attempting to exercise their rights under the Limited Warranty, and Defendant's repeated failures to fix the Defect. For example, on February 7, 2019, a customer wrote: "I kid you

---

[13] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Screen-Flickering-on-Ideapad-Flex-5/m-p/4141904?search-action-id=465490290853&search-result-uid=4141904 (last accessed June 6, 2019).

[14] *See* https://forums.lenovo.com/t5/General-Discussion/New-Flex-5-screen-doesn-t-work-and-poor-customer-service/m-p/4277334?search-action-id=465478125243&search-result-uid=4277334 (last accessed June 6, 2019).

[15] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Lenovo-Flex-5-1570-Black-Screen-Flickering/m-p/4293229?search-action-id=465490290853&search-result-uid=4293229 (last accessed June 6, 2019).

[16] *See* https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Flex-5-1570-screen-flickering-in-tablet-mode/m-p/4308542?search-action-id=465477875508&search-result-uid=4308542 (last accessed June 6, 2019).

[17] *See* https://forums.lenovo.com/t5/Lenovo-Yoga-Series-Notebooks/YOGA-730-flickering-Screen-blicking/m-p/4085136?search-action-id=465492512299&search-result-uid=4085136 (last accessed June 6, 2019).

not....I just received my laptop from Lenovo repair center. I turned it on and I have a dark bar going down the middle.  At least the flickering is only on the bottom half of the screen vs the whole screen…." Another customer reported that: "I had a lot of trouble with my Lenovo. 1st issue with screen flickering popped up quickly and I lost use of the laptop for a couple months while being repaired at the service center. They replaced the screen but that didn't solve the problem and the flickering started again a few weeks later."[18]

127.   In another example, on August 30, 2018, a forum member created a thread entitled "Yoga 730-131Kb Screen Flickering Issues Have Begun Within Several Days of Receiving My NEW Laptop," stating:

> Following advice posted online by the Lenovo Support team to update my drives and bios has not helped and I am extremly [sic] frustrated [sic] that a new laptop not even a month old is consistantly [sic] glitching on a day to day basis, at times getting [sic] so severe as to impede my work, is there a way to fix this without having to call up the Lenovo customer support and fighting through a machin [sic] answering machine to get some help.[19]

128.   In the same thread, another customer responds:

> My sons Yoga 730 he just bought from BestBuy has the same issue. He needs it for school and can't affort [sic] to send it away for report. I am an IT guy and have checked it out. Windows and Lenovo updates have all been applied

---

[18] *Id.*

[19] *See* https://forums.lenovo.com/t5/Lenovo-Yoga-Series-Notebooks/Yoga-730-131Kb-Screen-Flickering-Issues-Have-Begun-Within/m-p/4190562 (last accessed June 6, 2019).

35

to do not correct the issue. Seems like a [hardware] problem. . . .

129.    There are dozens of threads and hundreds (if not thousands) of posts in the Lenovo Forum detailing the monitor display problems caused by the Defect in the Yoga 730. Purchasers of the Flex 5 and Yoga 730 have also posted similar accounts on many other internet forums.[20]

130.    Some customers claim to have successfully remedied the Defect by replacing the eDP cable, which connects the monitor display to the motherboard and travels through the hinge assembly connecting the monitor and the body of the machine. If the eDP cable is poorly routed, or subject to pinching, pressure, or friction, opening and moving the display (such as when folding the monitor into tablet or tent mode) could loosen the cable and lead to the display issues associated with the Defect.

131.    On the Lenovo Forum, one customer wrote:

> I had the laptop repaired by a contracted service technician who replace the [eDP] cable that connects the screen to the main board. Voila. No issues so far. I was told this issue arises with other laptop makes as well! The cable routing

---

[20] *See, e.g.*, r/Lenovo, *Lenovo Flex 5 Screen Issues*, November 8, 2018, https://www.reddit.com/r/Lenovo/comments/9vfuqu/lenovo_flex_5_screen_issues/ (last accessed June 6, 2019); r/techsupport, *Brand new Lenovo Flex 5 screen glitch. Hardware or Software issue?*, August 27, 2017, https://www.reddit.com/r/techsupport/comments/6wes3h/brand_new_lenovo_flex_5_screen_glitch_hardware_or/ (last accessed June 6, 2019); Laptop Tech Support, *Lenovo Yoga 730 screen flashing like crazy*, November 28, 2018, https://forums.tomsguide.com/threads/lenovo-yoga-730-screen-flashing-like-crazy.441132/ (last accessed June 6, 2019).

and stress from the screen opening and closing apparently
had damaged the cable.[21]

132.    Multiple customers have stated that Lenovo's repairs under the

Limited Warranty amounted to no more than "reseating" (rather than replacing) the

eDP cable. One customer related their experience with Lenovo after their new

Yoga 730 experienced screen flickering as follows:

- Contacted customer service, when I described the problem they immediately recommended sending it in for repairs, as though they know about this common issue

- Sent laptop in for repairs; Lenovo holds my computer for weeks with no updates (said 7-9 business days)

- They provide update after much haranguing, then tried to charge me for the repairs, which I was only able to fight by engaging them on social media

- They eventually agreed to greenlight the repairs for no charge

- Lenovo returns my laptop, work order says only "reseated display cable" (so they didn't replace anything)

- Screen flickering again starts back up almost immediately

---

[21] *See* Lenovo Forum, *Re: Lenovo Flex 5 1470 black screen flickering*, September 7, 2018, https://forums.lenovo.com/t5/Lenovo-IdeaPad-1xx-3xx-5xx-7xx/Lenovo-Flex-5-1470-black-screen-flickering/m-p/4213550#M59986 (last accessed June 6, 2019).

- I open up the bottom panel, all they did was tape the display connector in place, which is ridiculously ineffective [22]

133.  The Defect manifests both inside and outside of the warranty period. As illustrated above, Defendant is often unable to fix the Defect during the warranty period and routinely refuses to repair the Defect free of charge outside of the warranty period.

134.  Lenovo has been on notice of the Defect in the Flex 5 since at least late 2017, and in the Yoga 730 since at least May 2018 through complaints made to the Lenovo Forum. Nevertheless, Defendant has failed to adequately respond to the Defect

135.  Although Lenovo has not officially acknowledged the pervasive nature of the Defect, it has—according to the accounts of many customers—communicated to some customers that a wiring issue in the Class Laptops causes the problem.

136.  Defendant marketed, promoted, and sold the Flex 5 and Yoga 730 laptops as 2-in-1 laptops featuring a high resolution display and a monitor capable of folding into tent and tablet modes.

---

[22] *See* Lenovo Forum, *Re: YOGA 730 flickering, Screen blicking*, December 11, 2018, https://forums.lenovo.com/t5/Lenovo-Yoga-Series-Notebooks/YOGA-730-flickering-Screen-blicking/td-p/4085136/page/17 (last accessed June 6, 2019).

137.   Defendant knew that a material factor for consumers purchasing a
Flex 5 or Yoga 730 was that the device possesses a high quality display, a foldable
monitor, and be able to consistently display input and output.

138.   Lenovo concealed from and/or failed to disclose to the public at large,
including the Plaintiffs and the Class the defective nature of the Class Laptops, and
failed to remove the Class Laptops from the marketplace or take adequate action to
remedy the Defect. Rather, Lenovo sold and serviced the Class Laptops even
though it knew, or was reckless in not knowing, that the Defect impacted the
display of the Class Laptops and would ultimately result in Plaintiffs' and Class
members' inability to use their Class Laptops for their intended purpose.

139.   It is likely that many of the Class Laptops will be used or purchased
by unsuspecting members of the putative class, and injunctive relief could prevent
harm to those who remain unaware of the Defect which can render the Class
Laptops useless. Further, potential Class-wide notice may inform Class members
of potential remedies they may not be aware of.

140.   As the Defect likely results from the design of the Class Laptops—
*i.e.*, the routing of the eDP cable through the monitor hinge—reseating or replacing
the cable are unlikely to fully remedy the Defect.

## CLASS ACTION ALLEGATIONS

141.   Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). The classes consist of:

1.   **The Nationwide Class:** All purchasers in the United States, excluding the state of Minnesota, who purchased a Class Laptop (the "Nationwide Class"); and

2.   **The California Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "California Subclass", and together with the Nationwide Class, the "Class").

3.   **The Georgia Subclass:** All purchasers in the state of Georgia who purchased a Class Laptop (the "Georgia Subclass", and together with the Nationwide Class, the "Class").

4.   **The Massachusetts Subclass:** All purchasers in the state of Massachusetts who purchased a Class Laptop (the "Massachusetts Subclass", and together with the Nationwide Class, the "Class").

5.   **The Michigan Subclass:** All purchasers in the state of Michigan who purchased a Class Laptop (the "Michigan Subclass", and together with the Nationwide Class, the "Class").

6.      **The New Jersey Subclass:** All purchasers in the state of New Jersey who purchased a Class Laptop (the "New Jersey Subclass", and together with the Nationwide Class, the "Class").

7.      **The New York Subclass:** All purchasers in the state of New York who purchased a Class Laptop (the "New York Subclass", and together with the Nationwide Class, the "Class").

8.      **The Pennsylvania Subclass:** All purchasers in the state of Pennsylvania who purchased a Class Laptop (the "Pennsylvania Subclass", and together with the Nationwide Class, the "Class").

9.      **The Washington Subclass:** All purchasers in the state of Washington purchased a Class Laptop (the "Washington Subclass", and together with the Nationwide Class, the "Class").

142.   Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

143.   _**Numerosity**_**:** Members of the Class are so numerous that their individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Class Laptops. The precise number of Class members can be ascertained through

discovery, which includes Defendant's records. Plaintiffs estimate the number of Class members to be in at least the tens of thousands. The disposition of their claims through a class action will benefit both the parties and this Court.

144. ***Commonality*:** There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members. Among the questions common to the Class are:

1.  Whether the Class Laptops suffer from a design defect that causes the eDP cable to fail;

2.  The origins and implementation of, and the justifications for, if any, Lenovo's policies and technology relating to the Defect and its manifestation in the Class Laptops;

3.  When Lenovo became aware of the Defect in the Class Laptops and how it responded to that knowledge;

4.  Whether Lenovo actively concealed and/or failed to notify consumers of the Defect in the Class Laptops;

5.  Whether Defendant knew of the Defect but failed to disclose the problem and its consequences to their customers;

6.  Whether a reasonable consumer would consider the Defect and its consequences to be material;

7.     Whether Defendant's conduct violates state consumer protection laws as asserted herein;

8.     Whether Defendant's conduct violated the Magnuson-Moss Warranty Act;

9.     Whether Defendant's sale of Class Laptops containing the Defect is unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce;

10.    Whether Defendant breached the implied warranty of merchantability by selling the Class Laptops containing the Defect;

11.    Whether Plaintiffs and the other Class members overpaid for their Class Laptops as a result of the Defect alleged herein;

12.    Whether Plaintiffs and Class Members would have purchased their Class Laptops, and whether they would have paid a lower price for them, had they known that they contained the Defect at the time of purchase;

13.    Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Class Laptops; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance

43

between the Class Laptops as merchantable in the absence of the

Defect, and as actually manufactured and sold possessing the Defect;

and, (iii) whether Plaintiffs and the Class are entitled to all costs

associated with repair and replacement of their Class Laptops; and

14.    Whether Plaintiffs and the other Class members are entitled to

equitable relief, including, but not limited to, restitution or injunctive

relief.

145.    ***Typicality*:** Plaintiffs' claims are typical of the claims of the members

of the Class, as all such claims arise out of Defendant's conduct in designing,

manufacturing, marketing, advertising, warranting, and selling the Class Laptops.

All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and

all Class members were injured in the same manner by Defendant's uniform course

of conduct described herein. Plaintiffs and all Class members have the same claims

against Defendant relating to the conduct alleged herein, and the same events

giving rise to Plaintiffs' claims for relief are identical to those giving rise to the

claims of all Class members. Plaintiffs and all Class members sustained monetary

and economic injuries including, but not limited to, ascertainable losses arising out

of Defendant's wrongful conduct as described herein. Plaintiffs are advancing the

same claims and legal theories on behalf of themselves and all absent Class

members.

44

146. ***Adequate Representation*:** Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product design defects, and state consumer fraud statutes.

147. ***Predominance*:** This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

148. ***Superiority*:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Given the amount at issue for each Class member, individual suits would not be economically viable; however, should individual Class members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I
### Violations of the Song-Beverly
### Consumer Warranty Act
### For Breach of Express Warranty
### (Cal. Civ. Code §§ 1790-1795.8)
### (By Plaintiff Irvine on Behalf of the California Subclass)

149.   Plaintiffs incorporate by reference each preceding paragraph as though sully set forth herein.

150.   Plaintiff Irvine brings this claim individually and on behalf of the California Subclass.

151.   Plaintiff Irvine and the California Subclass members who purchased the Class Laptops are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

152.   The Class Laptops are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

153.   Lenovo is a "manufacturer" of the Class Laptops within the meaning of Cal. Civ. Code § 1791(j).

154.   Lenovo made express warranties to Plaintiff and the California Subclass within the meaning of Cal. Civ. Code §§ 1791.2 & 1793.2(d).

155.   Lenovo breached these express warranties by selling defective Class Laptops that required repair or replacement within the applicable warranty period. Despite a reasonable number of attempted repairs, Lenovo has failed to adequately repair the Defect.

46

156.   Lenovo has failed to promptly replace or buy back the laptop of Plaintiff and the proposed California Subclass as required under Cal. Civ. Code § 1793.2(d)(2).

157.   As a direct and proximate result of Lenovo's breach of its express warranties, Plaintiff Irvine and the California Subclass received goods in a condition that substantially impair their value to Plaintiff and the other Subclass members. Plaintiff Irvine and the California Subclass have been damaged as a result of, among other things, overpaying for the Class Laptops, the diminished value of the Class Laptops, the Class Laptops' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

158.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff Irvine and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Laptops or the overpayment or diminution in value of their Class Laptops as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

159.   Pursuant to Cal. Civ. Code § 1794(d), (e) Plaintiff Irvine and the California Subclass are entitled to reasonable costs and attorneys' fees.

## Count II
## Violations of the Song-Beverly Consumer Warranty Act
## for Breach of Implied Warranty
## (Cal. Civ. Code §§ 1790-1795.8)
## (Plaintiff Irvine on Behalf of the California Subclass)

160.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

161.   Plaintiff Irvine brings this claim individually and on behalf of the California Subclass.

162.   Plaintiff Irvine and the California Subclass members who purchased the Class Laptops are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

163.   The Class Laptops are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

164.   Lenovo is a "manufacturer" of the Class Laptops within the meaning of Cal. Civ. Code § 1791(j).

165.   Lenovo impliedly warranted to Plaintiff Irvine that Class Laptops were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.2 & 1792.

166.   Section 1791.1(a) provides that: "Implied warranty merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

a.   Pass without objection in the trade under the contract description;

b.   Are fit for the ordinary purpose for which such goods are used;

c.  Are adequately contained, packaged, and labeled;

d.  Conform to the promises or affirmations of fact made on the container or label.

167.   The Defect in the Class Laptops is present in them when sold and substantially certain to manifest. The Class Laptops would not pass without objection in the laptop trade because the Defect causes all or substantially all of the laptops to experience screen flickering that impedes effective or desired use. The Defect thus affects the central functionality of the laptop, leading to hundreds of dollars in repair expenses, out-of-pocket costs to purchase replacement laptops and peripherals, and time-consuming and stressful service calls.

168.   Because the Defect impedes viewing of the laptop screen and operation, the Class Laptops are not fir for the ordinary purpose for which such laptops are used.

169.   Class Laptops are not adequately labeled because the labeling fails to disclose the Defect and does not advise the California Subclass of the Defect.

170.   Any attempt by Lenovo to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to Sections 1792.3 and 1792.4. Those sections of the Civil Code provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state each of the following: "(1) The goods are being

sold on an 'as is' or 'with all faults' basis. (2) The entire rise as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing and repair." Cal. Civ. Code § 1792.4(a). Lenovo's attempted implied warranty disclaimer does not conform to these requirements.

171.   The Defect deprived Plaintiff Irvine and the California Subclass of the benefit of their bargain and have resulted in Class Laptops being worth less than what Plaintiff and the members of the California Subclass paid.

172.   As a direct and proximate result of Lenovo's breach of its implied warranties, Plaintiff Irvine and the California Subclass received goods in a condition that substantially impair their value to Plaintiff and the other Subclass members. Plaintiff Irvine and the Subclass members have been damaged as a result of, among other things, overpaying for the Class Laptops, the diminished value of the Class Laptops, the Class Laptops' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance costs and repair costs.

173.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff Irvine and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Laptops or the

overpayment or diminution in value of their Class Laptops as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect. Pursuant to Cal. Civ. Code § 1794(d), (e) Plaintiff Irvine and the California Subclass are entitled to reasonable costs and attorneys' fees.

**Count III**
**Violations of the California Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200-17210)**
**(Plaintiff Irvine on Behalf of the California Subclass)**

174.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

175.   Plaintiff Irvine brings this claim individually and on behalf of the California Subclass.

176.   The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Lenovo's conduct violates each of these prohibitions.

**Unlawful Conduct**

177.   Lenovo's conduct is unlawful because, as set forth herein, it violates the Song-Beverly Consumer Warranty Act, among other laws.

178.   Lenovo is: (1) aware of the Defect, which renders the Class Laptops unreasonably susceptible to have their screens flicker and (2) aware that reasonable consumers will continue to operate the Class Laptops when their screens flicker

insofar as reasonable consumers will use alternative methods of operation, like external monitors, that essentially eliminate the portability of Class Laptops. Despite this knowledge, Lenovo sold the Class Laptops to Plaintiff Irvine and the California Subclass; refused to notify Plaintiff Irvine and the California Subclass of the Defect; and refused to remediate the Class Laptops to eliminate the Defect.

### Unfair Conduct

179.   Lenovo's conduct is unfair because it violated California's public policy, including that legislatively declared in the Song-Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it planes on the market are fit for their ordinary and intended purposes. The Defect impedes effective and expected operation of the Class Laptops.

180.   Lenovo acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

a. Selling Plaintiff and California Subclass members defective Class Laptops;

b. Failing to disclose the Defect despite the opportunity to do so in numerous locations that people in the market for a laptop would be likely to encounter;

c. Directing and furnishing replacement parts it knew would not adequately remedy the defect, and repairing defective parts with more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

d. Failing to exercise adequate quality control and due diligence over the Class Laptops before placing them on the market; and

52

e. Failing to acknowledge the scope and severity of the Defect, refusing to acknowledge the Class Laptops are defective and failing to provide adequate relief to Plaintiffs and California Subclass members.

181. The gravity of the harm resulting from Lenovo's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Laptops without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

182. There are reasonably available alternatives that would further Lenovo's business interests in increasing sales and preventing false warranty claims. For examples, Lenovo could have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect, and/or (b) disclosed the Defect prior to prospective consumers' purchases.

183. The harm from Lenovo's unfair conduct was not reasonably avoidable by consumers. The Class Laptops all suffer from the latent Defect, and Lenovo has failed to disclose it. Plaintiff Irvine and the California Subclass did not know of and had no reasonable means of discovering the Defect.

**Fraudulent Conduct**

184. Lenovo's conduct is fraudulent in violation of the UCL. Lenovo's fraudulent acts include knowingly and intentionally concealing from Plaintiff Irvine and the California Subclass the existence of the Defect and falsely

marketing and misrepresenting the Class Laptops as being functional and not possessing a defect that impedes effective and expected operation.

185.   Lenovo's misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to purchase their Class Laptops or pay more than they would have had Lenovo disclosed the Defect.

186.   At all relevant times, Lenovo had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the laptop, and because Lenovo made partial representations about the reliability and quality of the Class Laptops but failed to fully disclose the Defect.

187.   Accordingly, Plaintiff Irvine and the California Subclass have suffered injuries in fact, including lost money or property, as a result of Lenovo's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff Irvine and the California Subclass would not have purchased their Class Laptops at the prices they paid or would not have purchased them at all.

Plaintiff Irvine and the California Subclass seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Lenovo from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore to Plaintiff and the California Subclass any money Lenovo acquired by its unfair competition,

including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

### Count IV
### Violations of Georgia's Fair Business Practices Act
### (By Plaintiff Khetani on Behalf of the Georgia Subclass)

188.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

189.    Plaintiff asserts this cause of action on behalf of himself and the Georgia Subclass.

190.    Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff and members of the Georgia Subclass to purchase the above-mentioned Class Laptops with the screen flicker defect.

191.    Defendant sold the Class Laptops knowingly concealing that they contained the defects alleged.

192.    Defendant's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Laptops.  Lenovo's aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Class Laptops' cost, durability, performance, or quality.  The sale and distribution of the Class Laptops in Georgia was a consumer-oriented act and thereby falls under the Georgia's Fair Business Practices Act.

193.    Defendant's practices, acts, policies and course of conduct violated the Georgia's Fair Business Practices Act in that:

    a.    At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Laptops by failing to disclose to Plaintiff and the Georgia Subclass the known screen flicker defect.

    b.    Thereafter, Defendant failed to disclose the defects to Plaintiff and the Georgia Subclass, either through warnings or recall notices, and/or actively concealed from them the screen flicker defect, despite the fact that the company knew of such defects: (1) at the time of manufacturing; (2) at the point when customers posted about the defect on Lenovo's forums; and, at the very latest, (3) when Class Laptops were repaired or requested to be repaired within and outside the warranty period.

    c.    Defendant forced Plaintiff and the Georgia Subclass to expend time and/or money to attempt to remedy the screen flicker defect, despite the fact that Defendant had prior knowledge of the defect at the time of purchase or thereafter.

    d.    Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing

56

that significant portions of the damages resulting from the known, but concealed, screen flicker defect would not be revealed to the consumer until after coverage expired thereunder and that many of the laptop displays may fail prematurely, but outside the warranty period.

e.  Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Laptops to the consuming public and to represent that these laptops were in good working order, merchantable, and not defective, despite Defendant's knowledge that the laptops would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

194.  Despite that Plaintiff and other owners of Class Laptops have confronted Lenovo with the apparent falsity of the above representations, Lenovo has not disclosed the screen flicker defect, asserting special knowledge.

195.  The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the screen flicker defect.

196.   By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

197.   Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

198.   Had Plaintiff and the Georgia Subclass known about the existence of the screen flicker defect they would not have purchased their Class Laptops and/or paid as much for them. As such Plaintiff and the Georgia Subclass overpaid for their Class Laptops and did not receive the benefit of their bargain.

199.   As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff and the Georgia Subclass have been injured as alleged herein, and are entitled to recover actual, punitive and/or statutory damages to the extent permitted by law, in an amount to be proven at trial.

200.   Plaintiff and the Georgia Subclass also seek appropriate equitable relief, including an order requiring Lenovo to adequately disclose and remediate the screen flicker defect and an order enjoining Lenovo from selling laptops with the screen flicker defect in the future.

## Count V

## Violations of Massachusetts' Consumer Protection Law
## (Mass. Gen. Laws Ch. 93a, § 1. *et seq.*)
## (By Plaintiff Eckert on Behalf of the Massachusetts Subclass)

201.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

202.   Plaintiff Eckert brings this claim on behalf of himself and the Massachusetts Subclass pursuant to Mass. Gen. Laws Ch. 93a, § 1, *et seq.*

203.   Plaintiff Eckert, the members of the Massachusetts Subclass, and Defendant is a "person" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

204.   Defendant is engaged in "trade" or commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

205.   The Massachusetts consumer protection law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A, § 2.

206.   In the course of Lenovo's business, Lenovo intentionally or negligently concealed and suppressed material facts concerning the Defect affecting the displays of the Class Laptops. Defendant accomplished this by failing to disclose the known risk of the screen flicker without warning, denying warranty claims arising from the defect, and denying the existence of the defect.

207.    Defendant engaged in one or more of the following unfair or

deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

a.  Causing likelihood of confusion or of misunderstanding as to the approval or

   certification of the Class Laptop;

b.  Representing that the Class Laptops have approval, characteristics, uses, or

   benefits that they do not have;

c.  Representing that the Class Laptops are of a particular standard, quality, and

   grade when they are not;

d.  Advertising the Class Laptops with the intent not to sell or lease them as

   advertised;

e.  Engaging in other conduct which created a likelihood of confusion or of

   misunderstanding; and

f.  Using or employing deception, fraud, false pretense, false promise or

   misrepresentation, or the concealment, suppression, or omission of a

   material fact with intent that others rely upon such concealment, suppression

   or omission, in connection with the advertisement and sale/lease of the Class

   Laptops, whether or not any person has in fact been misled, deceived or

   damaged thereby.

208.   Lenovo intentionally and knowingly misrepresented material facts regarding the Class Laptops with intent to mislead Plaintiff and the Massachusetts Subclass.

209.   Lenovo knew or should have known that its conduct violated Massachusetts' laws prohibiting unfair and deceptive practices.

210.   Plaintiff and the Massachusetts Subclass had no way of discerning that Defendant's representation were false and misleading, or otherwise, learning the facts that Defendant had concealed or failed to disclose. Plaintiff and the Massachusetts Subclass did not, and could not, unravel Defendant's deception on their own.

211.   Defendant had an ongoing duty to Plaintiff and the Massachusetts Subclass to refrain from unfair and deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendant owed Plaintiff and Massachusetts Subclass members a duty to disclose all the material facts concerning the Defect because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the Massachusetts Subclass, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

212.   Plaintiff and the Massachusetts Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Lenovo's

misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Massachusetts Subclass members who purchased the Class Laptops would not have purchased them at all and/or—if the Laptops' true nature had been disclosed—would have paid significantly less for them. Plaintiff also suffered diminished value of his laptop, as well as lost or diminished use.

213.   As a direct and proximate result of Lenovo's actions described above, Plaintiff and the Massachusetts Subclass members have been  injured in fact and suffered damages. Plaintiff and the Massachusetts Subclass seek an order pursuant to Mass. Gen. Laws Ch. 93A, § 9 enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Massachusetts Act.

214.   On or about January 3, 2020, Plaintiff sent a notice letter to Lenovo, Inc., pursuant to Mass. Gen. Laws Ch. 93A, § 9(3). Additionally, Defendant was provided notice of the issues raised in this count and this Complaint by the numerous complaints lodged by Class Members on Lenovo's forums within a reasonable amount of time after the allegations of Class Laptop defects became public. Because Defendant failed to remedy their unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Massachusetts Subclass are entitled.

**<u>Count VI</u>**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws <u>§§ 445.903 *et seq.*</u>)**
**<u>(By Plaintiff Robinson on Behalf of the Michigan Subclass)</u>**

215.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

216.   Plaintiff Robinson brings this cause of action on his own behalf and on behalf of the members of the Michigan Subclass.

217.   Plaintiff and the Michigan Subclass members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

218.   Lenovo is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

219.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the

transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

220. Defendant knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the defective displays and misrepresented the standard, quality or grade of the Class Laptops, which directly caused harm to the Plaintiff. Defendant knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the defective displays and misrepresented the standard, quality or grade of the Class Laptops, which directly caused harm to the Plaintiff and the Michigan Subclass. Defendant actively suppressed the fact that the displays in Class Laptops are defective because of materials, workmanship and/or manufacturing defects.

221. Further, Defendant employed unfair and deceptive trade practices to deny repair or replacement of the defective displays under warranty and within a reasonable time in violation of the Michigan CPA. Defendant also breached its warranties as alleged herein in violation of the Michigan CPA.

222. Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Michigan Subclass had no reasonable way to know that Class Laptops contained displays that were defective in materials, workmanship, and/or manufacture. Defendant possessed superior knowledge as to the quality and characteristics of the Class Laptops,

including the defective displays, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as Plaintiff and members of the Subclass did.

223.   Defendant intentionally and knowingly misrepresented and omitted facts regarding the defective displays with the intent to mislead Plaintiff and Michigan Subclass members. Defendant knew, or should have known, that the displays are defective and render Class Laptops unfit for their primary purpose.

224.   Defendant owed a duty to disclose the defective displays to Plaintiff and the Michigan Subclass because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the defective displays. Rather than disclose the Defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Laptops and avoid the cost of repair or replacement of the defective displays.

225.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the defective Class Laptops were intended to mislead consumers and misled Plaintiff and Subclass members.

226.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the defective displays were material to Plaintiff and the Michigan Subclass. When Plaintiff and

the Michigan Subclass purchased their Class Laptops, they reasonably relied on the reasonable expectation that the Class Laptops would be free from defects and would have non-defective display. Had Defendant disclosed that the displays were defective and would cause significant monetary losses, Plaintiff and the Michigan Subclass would not have purchased the Class Laptops, or would have paid less for them.

227.   Defendant had a continuous duty to Plaintiff and the Michigan Subclass to refrain from unfair and deceptive practices under the Michigan CPA and to disclose the defect. Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the defective displays are substantially injurious to consumers.

228.   Defendant has knowingly and willfully engaged in unfair and deceptive trade practices alleged herein. Further, Defendant unconscionably marketed the Class Laptops to uninformed consumers in order to maximize profits by selling additional Class Laptops containing the undisclosed defect. Defendant's unlawful acts and practices affect the public interest and trade and commerce in the State of Michigan, were in bad faith, and present a continuing safety hazard to the Plaintiff and the Michigan Subclass.

229.   As a direct and proximate result of Defendant's violations of the Michigan CPA, Plaintiff Robinson and the Michigan Subclass have suffered actual

damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective displays; (2) out-of-pocket purchase of external monitors or replacement devices; and/or (3) the difference in value between the Class Laptops promised and warranted, and the Class Laptops containing the defective displays.

230.   Plaintiff and the Michigan Subclass seek injunctive relief to enjoin Lenovo from continuing its unfair and deceptive acts; monetary relief against Lenovo measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

## Count VII
## Violation of the New Jersey Consumer Fraud Act
## (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)
## (By Plaintiff Wang on Behalf of the New Jersey Subclass)

231.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

232.   Plaintiff Wang brings this cause of action on his own behalf and on behalf of the members of the New Jersey Subclass.

233.   Lenovo, New Jersey Plaintiff, and the New Jersey Subclass are "persons" within the meaning of the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. Ann. § 56:8-1(d).

234.   Lenovo engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

235.   The New Jersey CFA protects consumers against "[t]he act, the use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2.

236.   Lenovo engaged in unlawful trade practices including representing that Class Laptops have characteristics, uses, benefits, and qualities which they do not have; representing that Class Laptops are of a particular standard and quality when they are not; advertising Class Laptops with the intent not to sell them as advertised; and engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

237.   In the course of its business, Lenovo willfully failed to disclose and actively concealed the defective display discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.  Lenovo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in

connection with the sale of the Class Laptops. Lenovo knew it had installed a

defective display and knew that the defective display was not usable.  Lenovo

knew this for years, but concealed all of that information. Lenovo was also aware

that it was manufacturing, selling, and distributing laptops throughout the United

States that did not perform as advertised.  Lenovo concealed this information as

well.  By failing to disclose that the defective display was not usable, by marketing

its laptops as, reliable and of high quality, and by presenting itself as a reputable

manufacturer that valued reliability and stood behind its laptops after they were

sold, Lenovo engaged in deceptive business practices in violation of the New

Jersey CFA.

238.   In the course of Lenovo's business, it willfully failed to disclose and

actively concealed the serious defect discussed above.  Lenovo compounded the

deception by repeatedly asserting that Lenovo Laptops were reliable, of high

quality, and sold by a reputable manufacturer that valued reliability and stood

behind its laptops.

239.   Lenovo's unfair or deceptive acts or practices were likely to and did in

fact deceive reasonable consumers, including Plaintiff and the New Jersey

Subclass, about the true functionality of the Class Laptops, the quality of the

Lenovo brand, the devaluing of reliability of the Class Laptops, and the true value

of the Class Laptops. Lenovo intentionally and knowingly misrepresented material

69

facts regarding the Class Laptops with the intent to mislead Plaintiff and the New Jersey Subclass. Lenovo knew or should have known that its conduct violated the New Jersey CFA.

240.   As alleged above, Lenovo made material statements about the reliability and utility of the Class Laptops and the Lenovo brand that were either false or misleading. Lenovo owed Plaintiff a duty to disclose the true functionality and reliability of the Class Laptops, and the devaluing of functionality and reliability at Lenovo.

241.   Defendant owed a duty to disclose the defective display to the Plaintiffs and the New Jersey Subclass because Defendant possessed superior and exclusive knowledge regarding the defect associated with the defective display. Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Laptops and avoid the cost of repair or replacement of the defective displays.

242.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the defective displays were intended to mislead consumers and misled Plaintiff Wang and the New Jersey Subclass.

243.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the defective

displays were material to Plaintiff and the New Jersey Subclass.  When Plaintiff and the New Jersey Subclass purchased their Class Laptops, they reasonably relied on the reasonable expectation that the Class Laptops would be free from defects and would have a functional display.  Had Defendant disclosed that the displays were defective and would cause significant monetary losses, Plaintiff and the New Jersey Subclass would not have purchased the Class Laptops, or would have paid less for their laptops.

244.   Defendant had a continuous duty to Plaintiff and the New Jersey Subclass to refrain from unfair and deceptive practices under the New Jersey CFA and to disclose the defect.  Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the defective displays are substantially injurious to consumers.

245.   Defendant's unlawful acts and practices affect the public interest and trade and commerce in the State of New Jersey, were in bad faith, and present a continuing hazard to Plaintiff, the New Jersey Subclass and the public.

246.   As a direct and proximate result of Defendant's violations of the New Jersey CFA, Plaintiff and the New Jersey Subclass have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective displays; (2) out-of-pocket purchase of external monitors or replacement devices; and/or (3) the difference in value

between the Class Laptops promised and warranted, and the Class Laptops containing the defective displays.

247.   As a result of the foregoing conduct of Lenovo, Plaintiff and the New Jersey Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to, actual and statutory damages, treble damages, and an order enjoining Lenovo's deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

**Count VIII**
**Violations of New York General Business Law § 349**
**(N.Y. Gen. Bus. Law § 349)**
**(By Plaintiff Urquiza on Behalf of the New York Subclass)**

248.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

249.   Plaintiff Urquiza brings this claim on behalf of himself and the New York Subclass.

250.   Defendant conducts "business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

251.   Plaintiff Urquiza and members of the New York Subclass are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

252.   In the course of Lenovo's business, Lenovo intentionally or negligently concealed and suppressed material facts concerning the Defect

72

affecting the displays of the Class Laptops. Defendant accomplished this by failing to disclose the known risk of the display flickering without warning, denying warranty claims arising from the defect, and denying the existence of the defect.

253.   Defendant thus violated N.Y. Gen. Bus. Law § 349, at a minimum by:

a.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Laptops;

b.   Representing that the Class Laptops have approval, characteristics, uses, or benefits that they do not have;

c.   Representing that the Class Laptops are of a particular standard, quality, and grade when they are not;

d.   Advertising the Class Laptops with the intent not to sell or lease them as advertised;

e.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and

f.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of the Class Laptops, whether or not any person has in fact been misled, deceived or damaged thereby.

254.   Lenovo intentionally and knowingly misrepresented material facts regarding the Class Laptops with intent to mislead Plaintiff and the New York Subclass.

255.   Lenovo knew or should have known that its conduct violated N.Y. Gen. Bus. Law § 349.

256.   Defendant owed Plaintiff and the New York Subclass members a duty to disclose, truthfully, all the facts concerning the reliability of the Class Laptops because it:

    a.   Possessed exclusive knowledge of the Defect;

    b.   Intentionally concealed the Defect from consumers; and

    c.   Made incomplete or negligent representations about the Class Laptops generally, while purposefully withholding material facts from Plaintiff and the New York Subclass.

257.   Defendant's acts and omissions have also been unfair because they have caused substantial injury to consumers without any countervailing benefit. The conduct has been unethical and unscrupulous.

258.   Plaintiff and New York Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Lenovo's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the New York Subclass members who purchased the

Class Laptops would not have purchased or leased them at all and/or—if the Laptops' true nature had been disclosed—would have paid significantly less for them. Plaintiff also suffered diminished value of his laptop, as well as lost or diminished use.

259.   Defendant's violations present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and are likely to be repeated.

260.   As a direct and proximate result of Lenovo's actions described above, Plaintiff and the New York Subclass members have been injured in fact and suffered damages, and seek relief in the form of actual damages, statutory damages, punitive damages, reasonable attorneys' fees, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**Count IX**
**Violation of the Pennsylvania Unfair Trade Practices and**
**Consumer Protection Law**
**(73 P.S. §§ 201-1, *et seq.*)**
**(By Plaintiff LaMarca on Behalf of the Pennsylvania Subclass)**

261.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

262.   Plaintiff LaMarca brings this cause of action on his own behalf and on behalf of the members of the Pennsylvania Subclass.

263.    Plaintiff and the Pennsylvania Subclass purchased their Class Laptops primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

264.    All of the acts complained of herein were perpetrated by Lenovo in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

265.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (a) "Representing that goods or services have . . . characteristics, . . . [b]enefits or qualities that they do not have;" (b) "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another;" (c) "Advertising goods or services with intent not to sell them as advertised;" and (d) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

266.    Lenovo engaged in unlawful trade practices including representing that Class Laptops have characteristics, uses, benefits, and qualities which they do not have; representing that Class Laptops are of a particular standard and quality when they are not; advertising Class Laptops with the intent not to sell them as advertised; and engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

267.   In the course of its business, Lenovo willfully failed to disclose and actively concealed the defective display discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.  Lenovo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Laptops.

268.   Lenovo knew it had installed defective displays in the Class Laptops and knew that the defective displays were not usable.  Lenovo knew this for years but concealed all of that information. Lenovo was also aware that it was manufacturing, selling, and distributing laptops throughout the United States that did not function as advertised.  By marketing its laptops as functional, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued reliability and stood behind its laptops and its Warranty after they were sold, Lenovo engaged in deceptive business practices in violation of the Pennsylvania CPL.

269.   In the course of Lenovo's business, it willfully failed to disclose and actively concealed the serious defect discussed above.  Lenovo compounded the deception by repeatedly asserting that Lenovo branded Laptops were functional,

reliable, of high quality, and sold by a reputable manufacturer that valued reliability and stood behind its laptops after they had been sold.

270.   Lenovo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Pennsylvania Subclass, about the true functionality of the Class Laptops, the quality of the Lenovo brand, the devaluing of functionality and reliability at Lenovo, and the true value of the Class Laptops. Lenovo intentionally and knowingly misrepresented material facts regarding the Class Laptops with the intent to mislead Plaintiff and the Pennsylvania Subclass. Lenovo knew or should have known that its conduct violated the Pennsylvania CPL.

271.   Defendant owed a duty to disclose the defective displays to the Plaintiff and Pennsylvania Subclass because Defendant possessed superior and exclusive knowledge regarding the defect with the defective displays. Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Laptops and avoid the cost of repair or replacement of the defective displays.

272.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the defective displays were intended to mislead consumers and misled Plaintiff and the Pennsylvania Subclass.

273.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the defective displays were material to Plaintiff and the Pennsylvania Subclass.  When Plaintiff and the Pennsylvania Subclass purchased their Class Laptops, they reasonably relied on the reasonable expectation that the Class Laptops would be free from defects and would have a safe, non-defective display.  Had Defendant disclosed that the displays were defective and would cause significant monetary losses, Plaintiff and the Pennsylvania Subclass would not have purchased the Class Laptops, or would have paid less for their laptops.

274.   Defendant's unlawful acts and practices affect the public interest and trade and commerce in the State of Pennsylvania, were in bad faith, and present a continuing hazard to Plaintiff, the Pennsylvania Subclass and the public.

275.   As a direct and proximate result of Defendant's violations of the Pennsylvania CPL, Plaintiff LaMarca and the Pennsylvania Subclass have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective displays; (2) out-of-pocket purchase of external monitors or replacement devices; and/or (3) the difference in value between the Class Laptops promised and warranted, and the Class Laptops containing the defective displays.

276.   Lenovo is liable to Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a).  Plaintiff and the Pennsylvania Subclass are also entitled to an award of punitive damages given that Lenovo's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**Count X**
**Violation of the Washington Consumer Protection**
**Act, Wash. Rev. Code. Ann. § 19.86.010 et seq.**
**(By Plaintiff MacKay on behalf of the**
**WashingtonSubclass)**

277.   Plaintiff, individually and on behalf of the Class, repeats and realleges the foregoing paragraphs as though fully set forth herein.

278.   The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 et seq. (the "WCPA") prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce.

279.   Defendant is a "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1), and conduct "trade" and "commerce" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(2).

280.   Plaintiff MacKay and members of the Class are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

281.   By reason of the conduct alleged herein, Defendant engaged in unlawful, unfair, and deceptive practices within the meaning of the CPA.

282.   Defendant engaged in materially misleading acts and practices by marketing and representing that its Laptops were functional, superior products while failing to disclose the Defect.

283.   Defendant's omissions and representations were likely to mislead a consumer acting reasonably under the circumstances. Laptop purchasers are concerned about the functionality of their screens as their laptops cannot be easily used without them and would, therefore, find it material if a laptop screen contained the Defect that rendered them unfit for their ordinary purpose.

284.   Defendant's failure to disclose the Defect was also unfair, because it causes substantial injury to consumers without any countervailing benefit. To market and price a convertible laptop as detailed above while concealing the Defect that fundamentally interferes with its use is unethical and unscrupulous.

285.   The aforementioned conduct is and was deceptive and false. Defendant's wrongful conduct caused Plaintiff and the Class to suffer consumer-related injuries by causing them to pay more for a product than it was worth, and to spend money and time attempting to repair the defect, and/or purchase a controller without the defect.

286.    Defendant made the claims willingly and knowingly, despite the numerous consumer complaints detailed herein.

287.    Defendant alone possessed material information about the defect in the form of pre-market testing, complaints, warranty requests and other information not available to Plaintiff nor the Class.

288.    Defendant's violations present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and are likely to be repeated.

289.    As a direct and proximate result of Defendant's violations of the above, Plaintiff and Class Members suffered damages including, but not limited to: (1) paying more for the Class Laptops than they were worth and more than Plaintiff and Class Members would have had they known of the defect, (2) paying out of pocket attempting to repair the defect and/or for replacement laptops; and (3) lost time addressing the Defect.

290.    Plaintiff, individually and on behalf of the Class, seeks relief in the form of injunctive relief, actual damages, treble damages, and reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.090.

## Count XI
## Breach of Implied Warranty
## (Asserted on behalf of the Nationwide Class / Asserted
## in the Alternative on behalf of the State Subclasses)

291.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

292.    A warranty that the Class Laptops were in merchantable condition is implied by law.

293.    Plaintiff is an intended third-party beneficiary of Lenovo's implied warranties.

294.    These Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which such 2-in-1 laptops are used.  Specifically, the Class Laptops are inherently defective in that there are defects in the Class Laptops' screens, which are not of high quality, and which fail prematurely and/or fail to function properly as detailed herein.

295.    Plaintiff sent Lenovo a notice letter prior to the filing of this action. Defendant was also provided notice of these issues by numerous informal and formal complaints filed against it, including the instant Complaint and the various complaints detailed herein, and by numerous communications sent by Plaintiff and other Class members.

296.    Any attempt by Lenovo to disclaim or limit its implied warranties is unconscionable and unenforceable under the circumstances here.

297.   Specifically, any attempt by Lenovo to limit or disclaim its warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

298.   As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**Count XII**
**Breach of Express Warranty**
**(Asserted on behalf of the Nationwide Class / Asserted**
**in the Alternative on behalf of the State Subclasses)**

299.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

300.   Defendant expressly warranted that the Class Laptops were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the Limited Warranty.

301.   Defendant breached these warranties by selling to Plaintiff and Class members the Class Laptops with known problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

302.   As a result of the Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, substantial loss in value and resale value of the Laptops, and other

related damage.

303.   Defendant's attempt to disclaim or limit its express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect.  Furthermore, Defendant continues to charge Class members for repairing the defective screens – if it repairs them at all -- when in fact such repairs are actually necessitated because of Defendant's defective product.

304.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.

305.   Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

306.   A gross disparity in bargaining power existed between Lenovo and Class members, and Lenovo knew or should have known that the Class Laptops were defective at the time of sale and would fail well before their useful lives.

307.   In addition, Lenovo's warranty fails of its essential purpose because Lenovo has been and is unable to effectively repair the Defect.

308.   Plaintiffs and Class members have complied with all obligations

under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein. In addition, Plaintiff sent Defendant a notice letter prior to the filing of this action.

**Count XIII**
**Unjust Enrichment/Restitution**
**(Asserted on behalf of the Nationwide Class / Asserted**
**in the Alternative on behalf of the State Subclasses)**

309.   Plaintiffs alleges and incorporates by reference the allegations in the preceding paragraphs.

310.   Plaintiffs alleges and incorporates by reference the allegations in the preceding paragraphs, and asserts a claim for unjust enrichment on behalf of the Nationwide Class.

311.   Lenovo has been unjustly enriched as a result of the conduct described in this Complaint.

312.   Lenovo received a benefit from Plaintiff and other members of the Nationwide Class in the form of payment for products purchased on Lenovo's website.

313.   Retention of these benefits by Lenovo would be unjust and inequitable because Lenovo received these benefits by engaging in a false, deceptive, and misleading scheme to market the Flex 5 and Yoga 730 as premium, fully functional 2-in-1 laptop computers, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Complaint.

314.   The benefits (or at least some portion of the benefits) that Lenovo received were not legitimately earned, and came at the expense of Plaintiff and the other members of the Nationwide Class.

315.   Lenovo knows that its scheme is unjust, inequitable, and wrongful, but systematically engages in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

316.   Lenovo is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiff and other Nationwide Class members.

317.   Plaintiff and the Nationwide Class are entitled to restitution and disgorgement of all amounts unjustly retained by Lenovo, as well as other appropriate relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for a judgment against Defendant as follows:

A.  Entering judgment in favor of Plaintiffs against Defendant;

B.  Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

C.  Appointment of Plaintiffs as Class Representative for the Class;

D.  Appointment of Plaintiffs' counsel as Class Counsel;

E.  A declaration that Lenovo violated the Washington State statutes that form the basis for Plaintiffs' primary statutory claims;

F.  A declaration that Lenovo was unjustly enriched by its conduct as described herein;

G.  Monetary damages;

H.  Statutory damages in the alternative;

I.  Restitution;

J.  Injunctive relief in the form of enjoining Lenovo from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein, including enjoining Lenovo from misrepresenting and/or knowingly and intentionally concealing material facts concerning the characteristics, uses, and quality of the Class Laptops detailed herein, including by marketing the Class Laptops as "2-in-1" devices with "360° flexibility";

K.  Disgorgement of all monies received by Lenovo as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

L.  Penalties as provided by law;

M.  Treble damages;

N.  A permanent injunction enjoining Lenovo from continuing the unlawful,

unjust, unfair, and deceptive acts and practices described herein;

O.  Pre-judgment and post-judgment interest;

P.  Reasonable attorneys' fees and expenses; and

Q.  Such other further relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  April 2, 2021                    **DELEEUW LAW LLC**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (Del. Bar # 3569)
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
E-mail: brad@deleeuwlaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H St., NE
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
E-mail: nmigliaccio@classlawdc.com
 jrathod@classlawdc.com

David A. Goodwin (#386715)
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Mickey L. Stevens (#398549)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgoodwin@gustafsongluek.com
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mstevens@gustafsongluek.com

Kevin Landau
Evan Rosin
**TAUS, CEBULASH
 & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, New York 10038
Tel: (646) 873-7654
Fax: (212) 931-0703
E-mail: klandau@tcllaw.com
Erosin@tcllaw.com

*Attorneys for Plaintiff*